UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/23/2020

---

CLIFFORD L. GELMAN, M.D.,

                Petitioner,

        v.

THOMAS JOSEPH BORRUSO.,

                Respondent.

No. 19-CV-10649 (RA)

MEMORANDUM OPINION
& ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioner Clifford L. Gelman, M.D., seeks confirmation of an arbitration award entered by the Financial Industry Regulatory Authority ("FINRA") against Respondent Thomas Joseph Borruso. Respondent did not oppose the petition. For the reasons set forth below, the petition is granted.

## BACKGROUND[1]

This action arises from an arbitration proceeding between Petitioner, a surgeon residing in Pismo Beach, California, and Respondent, a financial advisor working out of Woodbury, New York. Am. Pet., Dkt 11, ¶¶ 1-3 & Ex. 3 ("Statement of Claim") ¶¶ 7, 12. Respondent was an employee and registered representative of LPL Financial LLC ("LPL"), a FINRA member. Am. Pet. ¶ 3 & Ex. 2.

Sometime prior to March 11, 2015, Respondent solicited an investment from Petitioner and recommended that he move his retirement savings to LPL to maximize his returns. *Id*. ¶ 11. In June 2015, Respondent opened an investment account for Petitioner's retirement funds with the objectives of growth and income. *Id*. ¶ 12. Without seeking the permission of Petitioner,

---

[1] The following facts are taken from the Amended Petition and attached exhibits, and are assumed to be true for purposes of the pending motion. *See Ecopetrol S.A. v. Offshore Exploration and Production LLC*, 46 F. Supp. 3d 327, 331 (S.D.N.Y. 2014).

Respondent invested "in speculative stocks that were unsuitable to [Petitioner's] goals" and made "excessive trades that lost money for [Petitioner], while generating large commissions for Respondent and his employer."  *Id.*  Respondent invested virtually all of Petitioner's retirement funds in SunEdison, a solar energy company that went bankrupt on April 21, 2016, causing Petitioner "out-of-pocket losses" of $391,647.01 and leaving him with only $12,734 of his initial investment of $404,382.  *Id.* ¶ 13 & Statement of Claim ¶ 39.  Although Respondent's trades left Petitioner with only a fraction of his initial investment, Respondent charged Petitioner over $32,000 in commissions.  Am. Pet. ¶¶ 12-13; Statement of Claim ¶¶ 3, 20.

After these events, the dispute resolution arm of FINRA took regulatory action against Respondent and barred him from association with any FINRA member in any capacity.  Am. Pet. ¶ 15.  Respondent's registration with FINRA was suspended on June 26, 2017, and he was permanently barred from association with any FINRA member on September 5, 2017.  *Id.* ¶ 20 & Ex. 2 at 9-10.

On March 28, 2018, Petitioner filed a statement of claim in an arbitration proceeding with FINRA, detailing how Respondent misled Petitioner about how his money would be invested, and then mismanaged his account.  *Id.* ¶ 16 & Ex. 3.  On April 9, 2018, FINRA served the statement of claim and "related case initiation documents" on Respondent "pursuant to the procedures of [FINRA's] Code" of Arbitration Procedure.  *Id.* ¶ 17 & Ex. 6.  Respondent, however, failed to submit a statement of answer or submission agreement, despite "his obligation to do so under Rule 12200 of FINRA's Code of Arbitration Procedure."  *Id.* ¶ 16.  On August 29, 2018, Petitioner hired a process server who served the statement of claim and all other documents filed in the proceeding as of that date on Respondent "by personally delivering the documents to him."  *Id.* ¶ 18 & Ex. 7. On October 22, 2018, Petitioner filed a motion for default proceedings in the arbitration against

2

Respondent pursuant to Rule 12801 of the Code of Arbitration Procedure, which permits claimants to request default proceedings against respondents who fail to timely answer the statement of claim and whose registration with FINRA has been "terminated, revoked, or suspended." *Id.* ¶¶ 19-20. Petitioner served that motion on Respondent by first class mail on October 22, 2018. *Id.* ¶ 19 & Ex. 8.

On April 16, 2019, the arbitrator determined that "Respondent Borruso was served notice of the Statement of Claim, Overdue Notice and Notification of Arbitrator by regular mail and is therefore bound by the Arbitrator's ruling and determination." *Id.* ¶¶ 21, 22 (quoting Ex. 1 ("Arbitration Award") at 3). The arbitrator issued an award in favor of Petitioner, finding Respondent liable to Petitioner for $250,000 in compensatory damages, interest on that award at the Florida legal interest rate from the date of the award until the date the award is paid in full, and $10,000 in attorneys' fees pursuant to the Florida Securities Act, F.S.A. 517.211(6). *Id.* ¶ 23 (citing Arbitration Award at 3). FINRA served the award on Respondent by first class mail on April 16, 2019. *Id.* ¶ 25 & Ex. 9. The decision in Petitioner's favor and award against Respondent has not been vacated or modified. *Id.* ¶ 26.

**PROCEDURAL HISTORY**

On November 18, 2019, Petitioner filed this petition seeking an order confirming the arbitration award and awarding him attorneys' fees and costs. Dkt. 1. On November 21, 2019, the Court ordered that Petitioner file and serve any additional materials with which he intends to support his petition for confirmation by December 6, 2019; that Respondent file his opposition, if any, by January 3, 2020; and that Petitioner file his reply, if any, by January 10, 2020. Dkt. 6. On December 3, 2019, Petitioner filed a motion to confirm the arbitration award and a memorandum of law in support of the petition. Dkts. 9, 10. On December 9, 2019, Petitioner filed affidavits

3

averring that Respondent was served with the petition, motion, and the Court's November 21, 2019 Order. Dkts. 13, 14. Petitioner also filed an amended petition on December 5, 2019, Dkt. 11, and on December 19, 2019 submitted an affidavit averring that he had served Respondent with the amended petition on December 5, 2019, Dkt. 20. On January 6, 2020, the Court extended Respondent's deadline to file an opposition to the petition to February 3, 2020. Dkt. 26. Respondent did not file an opposition to the petition.

## STANDARD OF REVIEW

"Because arbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (alteration and internal quotation marks omitted). Confirming an arbitration award is generally no more than "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015) (quoting *D.H Blair*, 462 F.3d 95 at 110); *see also* 9 U.S.C. § 9 ("[T]he court must grant such an order unless the award is vacated, modified, or corrected."). Because "[a]rbitration panel determinations are generally accorded great deference under the FAA," a "court is required to enforce the arbitration award as long as there is a barely colorable justification for the outcome reached." *Leeward Constr. Co. v. Am. Univ. of Antigua–Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (alteration and internal quotation marks omitted). "'[T]here is no general requirement that arbitrators explain the reasons for their award.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992).

An unanswered petition to confirm an arbitration award is treated as an unopposed motion for summary judgment. *See D.H. Blair & Co.*, 462 F.3d at 109-10. Summary judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and

4

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Thus, even though Respondent has "cho[sen] the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

## DISCUSSION

Petitioner argues that he is entitled to confirmation of the arbitration award and attorneys' fees and costs.  The Court agrees with Petitioner that there is no issue of material fact and thus confirms the award.  The Court further directs Petitioner to submit an affidavit and other supporting documents in support of his motion for attorneys' fees and costs.

### A.  Confirmation of the Arbitration Award

Petitioner has demonstrated that there is no material issue of fact in dispute to preclude enforcement of the arbitration award, and that he is entitled to confirmation of the arbitration award as a matter of law.  Section 2 of Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 9 of the FAA provides that a petition to confirm an arbitration award "may be made to the United States court in and for the district within which such award was made" and must be sought "within one year after the award is made[.]"  9 U.S.C. § 9.  The award here was entered on April 16, 2019 in New York and Petitioner commenced this action to confirm arbitration on November 18, 2019.  *See* Am. Pet. ¶ 21 & Ex. 1; Dkt. 1.  Thus, the award was made within the relevant time period in the appropriate district.

5

Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes (the "FINRA Code") "obligates" FINRA members to arbitrate "dispute[s] with a 'customer' at the customer's demand[.]" *UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 649 (2d Cir. 2011). Rule 12200 of the FINRA Code provides:

> Parties must arbitrate a dispute under the Code if:
> - Arbitration under the Code is either:
>     (1) Required by a written agreement, or
>     (2) Requested by the customer;
> - The dispute is between a customer and a member or associated person of a member; and
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200; *see also* FINRA Rule 12101(a) ("The Code applies to any dispute between a customer and a member or associated person of a member that is submitted to arbitration under Rule 12200 or 12201."). FINRA members are "bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein." *W. Va. Univ. Hosps., Inc.*, 660 F.3d at 649.

Petitioner has established that the FINRA Code mandates arbitration here because all three factors are met. First, Petitioner, a customer of Respondent, requested arbitration. Second, Respondent is "an associated person of a member," given that he was a registered representative of LPL, a FINRA member. Am. Pet. ¶ 3. The fact that Respondent was suspended on June 26, 2017 and barred from association with FINRA on September 5, 2017, *see* Am. Pet. ¶ 20 & Exs. 2, 5, does not defeat his status as an "associated person of a member." The FINRA Code defines an "associated person of a member" to include a "sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is

6

directly or indirectly controlling or controlled by a member, *whether or not . . . [a]ny such person's registration is revoked, cancelled, or suspended, [or] the person has been expelled or barred from FINRA*." FINRA Rule 12100(w)(2) (emphasis added). Moreover, FINRA Rule 12801(a) provides that a "claimant may request default proceedings against any respondent" who "fails to file an answer within the time provided by the Code" if that respondent was "[a]n associated person whose registration is revoked, cancelled, or suspended, who has been expelled or barred from FINRA, or whose registration has been terminated." FINRA Rule 12801(a)(4). Accordingly, Petition has established the second factor under the FINRA Code. Finally, Petitioner has established the third factor because the dispute arose in connection with Respondent's business activities with LPL.

Petitioner has also established that the FINRA Code mandating arbitration constitutes an agreement in writing to arbitrate that falls within the purview of the FAA. *See e.g.*, *Goldman, Sachs & Co. v. Golden Empire Schools Fin. Auth.*, 764 F.3d 210, 214 (2d Cir. 2014) ("FINRA Rule 12200 is a written agreement to arbitrate with customers"); *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014) ("The arbitration rules of an industry self-regulatory organization such as FINRA are interpreted like contract terms[.]") (footnote omitted); *W. Va. Univ. Hosps., Inc.*, 660 F.3d at 649 (holding that UBS, a FINRA member, must adhere to FINRA's rules and regulations, including its arbitration provision, and that "[w]ith respect to these provisions, the Federal Arbitration Act . . . requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms") (internal citations and quotation marks omitted); *New York Bay Capital, LLC v. Cobalt Holdings, Inc.*, No. 19-CV-3618 (GHW), 2020 WL 1989485, at *3 (S.D.N.Y. Apr. 27, 2020). Respondent was therefore bound to arbitrate with Petitioner under the FINRA Code, which falls within the scope of the FAA.

The Second Circuit has explained that an "[arbitration] award should be confirmed if a

ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).   Petitioner alleged in the underlying arbitration that Respondent convinced Petitioner to transfer his retirement savings to Respondent's employer to manage, and then made unapproved risky investments, resulting in "losses of $391,647.01" to Petitioner's fund.   Am. Pet. ¶¶ 11-13 & Ex. 3 ¶¶ 26-40.   Respondent did not timely answer Petitioner's statement of claim in the FINRA arbitration proceedings, despite being timely served. *See id.* ¶¶ 17, 18 & Exs. 6, 7.   Therefore, on April 16, 2019, after Respondent further failed to respond to an "Overdue Notice and Notification of Arbitration," the arbitrator held that Respondent was (1) properly served, (2) bound by the ruling and determination, and (3) liable to Petitioner for $250,000 in compensatory damages, for interest on that award in accordance with the Florida legal rate, and for $10,000 in attorneys' fees pursuant to Social Securities Act, F.S.A. 517.211(6).   *Id.* ¶¶ 22, 23 & Ex. 1 at 3.   Because none of this evidence is contested, and the award has not been vacated or modified, the basis for the arbitrator's decision can be inferred from the facts presented.   *See Paysafe Partners LP v. Merch. Payment Grp. LLC*, No. 19-CV-495 (LGS), 2019 WL 1986607, at *3 (S.D.N.Y. May 6, 2019); *see also D.H. Blair & Co.*, 462 F.3d at 110 ("the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'") (quoting 9 U.S.C. § 9).   The award in Petitioner's favor is therefore confirmed by this Court.

### B.   Attorneys' Fees and Costs

Petitioner also seeks attorneys' fees and costs incurred in bringing this petition in light of Respondent's failure to "pay the award" or "file a motion to vacate or modify" it.   *See* Pet. Mem. at 10.   Petitioner requests permission to submit an affidavit and other supporting documents in support of his motion for attorneys' fees within 14 days after the entry of judgment on the arbitration award, pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.   *See id.* at 11.

The Court grants Petitioner's request.

In the context of a petition to confirm an arbitration award, the Second Circuit has explained that it is a "guiding principle" that when a respondent "refuses to abide by an arbitrator's decision without justification, attorneys' fees and costs may properly be awarded." *Odeon Capital Group LLC v. Ackerman*, 864 F.3d 191, 198 (2d Cir. 2017) (quoting *Int'l Chemical Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). Courts in this district have thus routinely awarded attorneys' fees when the respondent has neither complied with the award nor opposed the petition to confirm arbitration. *See, e.g.*, *Trustees of the New York City Dist. Council of Carpenters Pension Fund v. S&S Kings Corp.*, No. 19-CV-1052 (RA), 2019 WL 4412705, at *4 (S.D.N.Y. Sept. 16, 2019) (granting attorneys' fees when respondent failed to comply with arbitration award and failed to oppose petition); *Paysafe Partners LP*, 2019 WL 1986607, at *3 ("As Respondent has not appeared in this action nor challenged the Award, Petitioner is entitled to reasonable attorneys' fees and costs"); *New York City Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const., Inc.*, No. 03-CV-5122 (DAB), 2003 WL 22773355, at *8 (S.D.N.Y. Nov. 21, 2003) (awarding attorneys' fees where defendant failed to participate in arbitration proceedings, respond to petition to confirm arbitration, or pay the award).

Here, Respondent has not complied with the award. And by not opposing this petition, he has offered no justification for his failure to do so. The Court thus grants Petitioner's request for attorneys' fees in bringing this action to confirm the award. *See First Nat'l Supermarkets*, 118 F.3d at 896. The Court directs Petitioner to submit an affidavit with an accounting of costs and fees within fourteen days of this Order. *See Herrenknecht Corp. v. Best Road Boring*, No. 06-CV-5106 (JFK), 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding fees on an unopposed petition to confirm arbitration and ordering petitioner to submit fees and costs "incurred in

obtaining confirmation of the arbitration award").

## CONCLUSION

For the foregoing reasons, the petition to confirm the arbitration award is granted. The Clerk of Court is respectfully directed to enter judgment in the amount of $250,000 plus interest calculated at a rate of 6.33% per annum from the date of the award, April 16, 2019, through the date judgment is entered in this action, in addition to $10,000 in attorneys' fees awarded during the arbitration proceeding. Petitioner's request for attorneys' fees and costs incurred in connection with this action is also granted. Petitioner shall submit an affidavit and other supporting documents in support of his motion for attorneys' fees no later than fourteen days from the date of this Order. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:      July 23, 2020
            New York, New York

                                        Ronnie Abrams
                                        United States District Judge